

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RN/RTP
F.#2011R00633                          *271 Cadman Plaza East*
                                       *Brooklyn, New York 11201*

April 9, 2012

By ECF and HAND DELIVERY

The Honorable Sandra L. Townes
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:  United States v. Carmen Martucci
           Criminal Docket No. 11-345 (S-3) (SLT)

Dear Judge Townes:

    The government respectfully submits this letter in response to the defendant's April 5, 2012 supplemental letter in support of his application for pre-trial release, in which he requests that the Court order the government to make Special Agent Frank Adamo of the Drug Enforcement Administration available to testify at a hearing.

    The defendant, who has been indicted on charges of conspiring that from 2005 to 2012, he conspired to distribute and distributing five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii)(II) and 846 from 2005 to 2012, has failed to rebut the statutory presumption that he would pose a danger to the community if released.  Therefore, the government respectfully submits that the defendant's request to examine Special Agent Adamo should be denied and that the defendant should be detained pending trial.

I.    The Government's Proffer

    During the detention hearing before the Honorable James Orenstein on March 9, 2012, in the government's March 28, 2012 opposition to the defendant's appeal of his detention ordered by Judge Orenstein, and during the detention hearing before the Court on April 5, 2012, the government proffered the following information in support of its position that the defendant is a danger to the community and that, if released, he will resume his

2

criminal activity: 1) the expected testimony of two cooperating witnesses ("CW1" and "CW2") that Martucci was involved in the distribution of cocaine, including testimony from CW1 that the witness sold the defendant multi-kilogram quantities of cocaine for several years; 2) the defendant's close association with his co-defendant Joseph Sclafani, a member of the Gambino crime family; 3) the defendant's criminal history, which includes two prior convictions, including a felony, for drug-related activity; 4) a drug ledger found in Sclafani's residence indicating that an individual identified as Blockhead, a nickname CW1 and CW2 have advised refers to Martucci, owed Sclafani more than $43,000 for drug sales; and 5) evidence that the defendant continued to distribute cocaine <u>after</u> Sclafani and co-defendant Neil Lombardo (the supplier of the cocaine that the defendant purchased from Sclafani) were arrested for the distribution of cocaine.

  Martucci's relationship with Sclafani is particularly important because, on at least two prior occasions, Sclafani has used others to facilitate his drug distribution operation.  For example, just before Sclafani's incarceration for racketeering and cocaine distribution in 2000, Sclafani introduced Martucci to CW1 and instructed CW1 to sell cocaine to Martucci during Sclafani's period of incarceration.  Then, after Sclafani was incarcerated in 2010 for violating the terms of his supervised release in 2009, he directed CW1 to continue distributing cocaine to his customers, including to Martucci, during Sclafani's incarceration.

  Notably, this violation of supervised release occurred after Martucci and Sclafani were stopped by the Kansas State Police on their way to meet Lombardo in Las Vegas.  In the car that Martucci was driving, the police found 15 cell phones and more than $100,000 in cash, the vast majority of which was hidden in a false compartment.  Martucci's close relationship with Sclafani demonstrates that he plays an integral, not peripheral, role in the drug distribution conspiracy, and is therefore likely to be someone on whom Sclafani will rely to maintain the drug distribution operation.

  This danger is particularly acute in light of the evidence that Martucci continued to distribute cocaine after Sclafani's arrest.  Enclosed for the Court's review is a copy of a consensual recording of a conversation between CW1 and one of the defendant's co-conspirators, co-defendant Joseph Ida, on November 22, 2011, several months after the arrest of Sclafani, Lombardo and others.  The government expects that CW2 will testify that, during this recorded conversation, Ida informed CW2 that since Sclafani's arrest, Ida had been purchasing cocaine

from Martucci, to whom he was introduced by Sclafani.  During the recorded conversation, Ida explained to CW2 that Martucci had a source of supply in Irvington (New Jersey), but that Martucci would not permit Ida to meet with the source directly.  The pertinent portions of the audio recording start at the 3:52 marker.

Moreover, CW1 is expected to testify that Martucci owes money to Sclafani and others.  Martucci's debts are also discussed by CW2 and Ida during the November 22, 2011 conversation.  This further increases the likelihood that Martucci will continue to distribute cocaine if released.

II. Martucci's Bail Proposal Is Inadequate

The defendant proposes that he be released with several conditions, including that he be confined to his father-in-law's residence where his father-in-law and other family members will monitor him and assure that he complies with the conditions of his release.  However, their assurances do little to rebut the presumption that he is dangerous and will remain so if released. See United States v. Arena, 878 F. Supp. 439, 443 (N.D.N.Y. 1995); Cf. United States v. Mercedes, 254 F.3d 433, 436-37 (2d Cir. 2001) (holding that depending on circumstances, a defendant's showing of strong community ties, a substantial bond, and electronic monitoring do not always rebut the presumption of dangerousness, though they may be relevant to the issue of flight risk).  Simply put, the defendant's family members cannot assure the defendant's compliance with his release. See United States v. Dono, 275 Fed. Appx. 35, 37-38, 2008 WL 1813237 (2d Cir. Apr. 23, 2008) (reversing district court's decision to release defendant pre-trial and finding that defendant's father, a retired police officer, "by no fault of his own, cannot be said to be 'trustworthy' in monitoring his own son's compliance with conditions of bail twenty-four hours a day, seven days a week").

III. Martucci's Request for Special Agent Adamo's Testimony

The defendant also requests that the Court order the government to produce the case agent to testify at the hearing because there is "little evidence to infer that if released, [the defendant] will sell cocaine" and the defendant would like to "examine the case agent to ascertain whether or not such evidence exists in his investigation."  The request should be denied.

As an initial matter, the defendant's argument that there is little evidence that he will continue to sell drugs is plainly wrong.  The government has proffered evidence indicating

4

the defendant has been distributing cocaine for several years, that he is saddled with substantial debt to Sclafani for prior drug purchases, and that he continued to distribute cocaine up through late last year, even after Sclafani and others were arrested. These factors weighs strongly against any argument that the defendant is not a danger to the community. See Arena, 878 F. Supp. at 443 (holding that evidence that the defendant continued to sell drugs after the government had already seized large quantities of drugs from his co-conspirators was critical evidence supporting detention).

Moreover, the government is entitled to proceed by proffer at a detention hearing, see United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000), and the defendant does not have an absolute right to call adverse witnesses. See United States v. Salerno, 631 F. Supp. 1364, 1373 (S.D.N.Y. 1986); 18 U.S.C. § 3142(f)(2)(B) (stating that defendant may cross-examine witnesses "who appear at the hearing").[1] It is well settled that detention hearings are not to be turned into mini-trials or as a discovery tool for the defendant. See United States v. Martir, 782 F.2d 1141, 1146 (2d Cir. 1986). Given that the defendant has not articulated how the case agent's testimony will demonstrate that Martucci would not pose a danger to the community if released. his request for the agent's testimony appears to be simply a fishing expedition. Indeed, Martucci has not disputed any of the proffered evidence that the government has submitted in support of his detention.

---

[1] Accordingly, should the Court determine that Agent Adamo's testimony is required at a hearing, the government respectfully submits that he should be ordered to appear as a witness for the government, not as an adverse witness for the defense.

5

IV. <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that the defendant's detention should be continued pending trial and that the defendant's request for the testimony of Special Agent Adamo be denied.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney

                        By:  /s/_____
                             Rachel Nash
                             Robert T. Polemeni
                             Assistant U.S. Attorneys
                             (718) 254-6072/6044